M. KENDALL DAY, Chief
Asset Forfeiture and Money Laundering Section (AFMLS)
WOO S. LEE
Trial Attorney
KYLE R. FREENY
Trial Attorney
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone: (202) 514-1263

EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JOHN J. KUCERA (CBN: 274184)
CHRISTEN A. SPROULE (CBN: 310120)
Assistant United States Attorneys
Asset Forfeiture Section
  Federal Courthouse, 14th Floor
  312 North Spring Street
  Los Angeles, California 90012
  Telephone: (213) 894-3391/(213) 894-4493
  Facsimile: (213) 894-7177
  E-mail: John.Kucera@usdoj.gov
       Christen.A.Sproule@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>"THE WOLF OF WALL STREET" MOTION PICTURE, INCLUDING ANY RIGHTS TO PROFITS, ROYALTIES AND DISTRIBUTION PROCEEDS OWED TO RED GRANITE PICTURES, INC. OR ITS AFFILIATES AND/OR | No. CV 16-05362-DSF(PLAx)<br><br>STIPULATION |

ASSIGNS

Defendant.

WHEREAS, on or about July 20, 2016, the United States of America (the "United States," or the "Government") filed the above-captioned civil lawsuit in rem against "The Wolf of Wall Street" motion picture, including any rights to profits, royalties and distribution proceeds owed to Red Granite Pictures, Inc. or its affiliates and/or assigns (the "Defendant In Rem") seeking to forfeit the Defendant In Rem to the United States;

AND WHEREAS, on July 20, 2016, the United States filed in the above-captioned case an *Ex Parte* Application seeking a restraining order related to the Defendant In Rem, but now seeks to withdraw such Application and instead apply to this Court for an Order consistent with the terms set forth in this Stipulation.

AND WHEREAS, the United States' civil lawsuit was not filed against Red Granite Pictures, Inc. or its affiliates and/or assigns, or any of its employees or agents (collectively and individually, "Red Granite")[1], or against any other motion picture assets of Red Granite's;

AND WHEREAS, Red Granite is party to an Amended and Restated Security Agreement (the "Security Agreement"), dated as of May 15, 2015, wherein Red Granite

---

[1] In this Stipulation ("Stipulation"), the term "Red Granite" includes, collectively and individually: Red Granite Pictures, Inc.; Red Granite International, Inc.; Red Granite Capital Ltd.; Red Granite Partners, Inc.; Red Granite Capital US, LLC; Red Granite Music, LLC; Red Granite Investment Holdings, LLC; Red Granite Real Estate Holdings, LLC; Red Granite Entertainment Holdings, LLC; Red Granite Entertainment, Inc.; RG Productions Development, LLC; DDTo Finance, LLC; RGDD2 Productions, LLC; Dumb and Dumber To, LLC; TWOWS, LLC; The Papillon Project, LLC; Papillon Movie LLC; Daddy's Home, LLC; Daddy's Home Finance, LLC; OOTF, LLC; The Horns Project, Inc.; Victory or Death, LLC; The Horns Project Productions Ltd.; Blue Box International LLC; Metropolis IX Capital Advisors, LLC (the foregoing, collectively, the "Red Granite Entities"); and their employees or agents, including but not limited to Riza Shahriz Bin Abdul Aziz and Christopher Joey McFarland.

granted to Comerica Bank ("Comerica"), in its capacity as agent for various lenders (the "Lenders"), a security interest in certain of Red Granite's assets, including all of Red Granite's right, title and interest into a motion picture entitled "The Wolf of Wall Street," to secure to the Lenders and to Comerica repayment of a loan evidenced by an Amended and Restated Loan and Security Agreement (the "Loan Agreement"), dated as of May 15, 2015, by and among the Lenders, Comerica, as agent for the Lenders, and TWOWS, LLC and DDTo Finance, LLC, as borrowers (each a "Borrower" and together, the "Borrowers"), pursuant to which Comerica and the Lenders were granted a security interest in, lien on, and right of set-off against all of the Borrowers' right, title and interest in and to all personal property assets of the Borrowers;

AND WHEREAS, Red Granite is party to a Collection Account Management Agreement (the "CAMA") dated as of October 10, 2014, by and among Fintage Collection Account Management B.V. ("Fintage"); TWOWS, LLC; Red Granite International Inc.; Red Granite Capital US, LLC; Sikelia Productions, Inc. f/s/o Martin Scorsese; Birken Productions, Inc. f/s/o Leonardo DiCaprio; Film Finances, Inc.; Screen Actors Guild-American Federation of Television and Radio Artists; Directors Guild of America Inc.; and Writers Guild of America, West, Inc. for itself and on behalf of Writers Guild of America, East, Inc. (each of which a "Party" and together the "Parties"), pursuant to which Fintage was named as a collections account manager responsible for receiving all revenues derived from "The Wolf of Wall Street" deposited into a bank account (the "Collection Account") at City National Bank ("CNB") and for administering, allocating and paying the same on behalf of the Parties, subject to the terms of the Loan Agreement;

AND WHEREAS, pursuant to an Amended and Restated Blocked Account and Sweep Agreement ("Sweep Agreement"), dated as of May 15, 2015, among CNB, Fintage and Comerica, before Fintage may disburse any funds in the Collection Account to the Parties, CNB remits to Comerica all funds deposited into the Collection Account, for application to the Borrower's obligations owing under the Loan Agreement until

those obligations are fully repaid;

AND WHEREAS, Fintage disburses proceeds of the film "The Wolf of Wall Street" after the date that all monetary obligations owing to Comerica and the Lenders under the Loan Agreement have been repaid in full and the commitment of the Lenders to advance funds thereunder has terminated, whereupon Comerica's and the Lenders' rights under the Sweep Agreement terminate, to various third parties in accordance with the CAMA;

AND WHEREAS, Red Granite is party to a Collection Account Management Agreement (the "FWK CAMA") dated as of March 14, 2012, by and among Fintage; FWK, LLC; Cinetic Media, LLC; Red Granite International Inc.; Red Granite Capital Ltd.; Film Finances, Inc.; Good Kitty Productions, Inc. f/s/o Megan Fox; Screen Actors Guild, Inc.; Directors Guild of America Inc.; and Writers Guild of America, West, Inc. for itself and on behalf of Writers Guild of America, East, Inc. pursuant to which Fintage was named as a collections account manager responsible for receiving all revenues derived from the motion picture "Friends With Kids" deposited into a bank account (the "FWK Collection Account") at CNB and for administering, allocating and paying the same on behalf of the parties to the FWK CAMA;

AND WHEREAS, it is not the intention of the United States to deprive any third party from proceeds owed to it under the CAMA, the Sweep Agreement, the Control Agreement, the Security Agreement, the Loan Agreement, or the FWK CAMA, or to prevent any third party, including but not limited to financial institutions, motion picture studios or distributors, or trade vendors, from doing business with Red Granite, or to otherwise interfere with Red Granite's ordinary business operations;

IT IS HEREBY STIPULATED AND AGREED THAT:

1. Each of CNB and Fintage shall continue to disburse all proceeds of the film "The Wolf of Wall Street" owed to, as the case may be, Comerica under the Sweep Agreement, the Control Agreement, the Security Agreement and the Loan Agreement and to the Parties under the CAMA from the Collection Account, provided, however,

after the date that all monetary obligations owing to Comerica and the Lenders under the Loan Agreement have been repaid in full and the commitment of the Lenders to advance funds thereunder has terminated, whereupon Comerica's and the Lenders' rights under the Sweep Agreement terminate, any proceeds in the Collection Account specified in the CAMA as being payable to Red Granite shall be held by Fintage in a segregated account pending further agreement or order of the Court, and further provided that, except as described in Paragraph 2, Fintage shall maintain such funds free and clear of any further liens or encumbrances. For purposes of this stipulation, the "proceeds" of a motion picture shall include any return of capital or investment, profits, return on investment, or any other amounts due in connection with that motion picture.

2. Comerica and the Lenders shall not make any additional loans or advances to the Borrowers under the Loan Agreement other than, in accordance with the terms and conditions of the Loan Agreement, for the payments of interest, fees and costs owed to Comerica and the Lenders, or to Fintage, and as necessary to compensate an individual, entity, or group of individuals or entities (individually or collectively, the "Information Agent") that may be appointed by and at the sole discretion of the Government to review the accounting, books, and records of the Red Granite Entities. The Information Agent's reasonable fees and expenses shall be paid within 21 days of the presentation of invoices approved by the Government.

3. All third parties obligated to pay proceeds from "The Wolf of Wall Street" into the Collection Account, including, but not limited to, Paramount Pictures Corporation, Universal Pictures, a division of Universal City Studios LLC, or any taxing authority, are expressly permitted to and shall continue to do so without interruption, subject to the hold harmless provisions of paragraph 6, below.

4. Each of CNB and Fintage shall continue to disburse all proceeds of the film "Friends With Kids" owed to the parties to the FWK CAMA from the FWK Collection Account, provided, however, that any proceeds in the FWK Collection Account specified in the FWK CAMA as being payable to Red Granite shall be held by Fintage in

a segregated account pending further agreement or order of the Court, and further provided that Fintage shall maintain such funds free and clear of any further liens or encumbrances.

5. For actions taken during the pendency of this Stipulation, all third parties obligated to pay proceeds from "Friends With Kids" into the FWK Collection Account, including, but not limited to, Lions Gate Films Inc. or any taxing authority, are expressly permitted to and shall continue to do so without interruption, subject to the hold harmless provisions of paragraph 6, below.

6. For actions taken during the pendency of this Stipulation, the United States agrees to hold harmless for all purposes any financial institution in connection with providing banking services (including, without limitation, providing access to or opening deposit accounts, custodial accounts, check clearing or processing services, wire transfer services, and secured or unsecured lending except as specifically prohibited in paragraphs 1, 2, and 4 herein) to Red Granite. For the avoidance of doubt, for actions taken during the pendency of this Stipulation, the United States agrees to hold harmless under this paragraph any financial institution for engaging in secured or unsecured lending agreements with Red Granite in connection with motion pictures currently under development or in production, or that come under development or in production.

7. For actions taken during the pendency of this Stipulation, the United States likewise agrees to hold harmless for all purposes any studio, distributor, trade vendor, or any other person as a result of engaging in ordinary course business dealings with Red Granite, including, for the avoidance of doubt, any motion picture studio or taxing authority for remitting payment in accordance with paragraph 3 or 5.

8. Nothing in this Stipulation restrains any assets other than the Defendant In Rem and the funds in the FWK CAMA. Except as specifically set forth herein, all third parties are permitted to continue making payments to and doing business with Red Granite under existing agreements. For the avoidance of doubt, any third parties, including but not limited to Paramount Pictures, that are obligated to pay to Red Granite

or their assigns (including, without limitation, collateral assignees) the proceeds of motion pictures other than "The Wolf of Wall Street" or "Friends With Kids" (including, without limitation, "Dumb and Dumber To," "Horns," "Out of the Furnace," and "Daddy's Home") are expressly permitted to and shall continue to do so, subject to the hold harmless provisions of paragraph 6, above, and Red Granite or its assigns (including, without limitation, collateral assignees) is permitted to receive such proceeds.

9. Any financial institution that currently provides banking services to Red Granite is directed to continue to do so, subject to the hold harmless provisions of paragraph 6, above.

10. Nothing in this Stipulation is intended to relieve any financial institution of any obligations to monitor transaction activity or to file Bank Secrecy Act reports, as appropriate and in the ordinary course of that financial institution's business, provided however that no financial institution shall be required to file Bank Secrecy Act reports for ordinary course transactions involving Red Granite or to otherwise file any Bank Secrecy Act reports solely because Red Granite is a party to a transaction.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

| | |
|---|---|
| DATED: August 1, 2016 | Respectfully submitted, |
| | EILEEN M. DECKER<br>United States Attorney |
| | /s/John J. Kucera |
| | JOHN J. KUCERA<br>CHRISTEN A. SPROULE<br>POONAM KUMAR<br>Assistant United States Attorneys<br>312 North Sprint Street, 14th Floor<br>Los Angeles, California 90012<br>Tel.: (213) 894-3391/4493 |
| DATED: August 1, 2016 | BOIES, SCHILLER & FLEXNER LLP<br><br>Attorneys for Red Granite |
| | /s/(per e-mail confirmation)<br>MATTHEW L. SCHWARTZ<br>(pro hac vice forthcoming)<br>575 Lexington Avenue<br>New York, New York 10022<br><br>Tel: (212) 303-3646 |

8