UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>"THE WOLF OF WALL STREET"<br>MOTION PICTURE, ETC.,<br><br>　　　　Defendant. | Case No. 16-cv-05362-DSF (PLAx)<br><br><br>**ORDER** |

　　　　Pursuant to the stipulation and request of the parties, and good cause appearing therefor, IT IS HEREBY ORDERED:

　　　　1.　　The stipulation among the Parties dated August 16, 2016 and the Court's order implementing it [Case No. 16-cv-05362-DSF (PLAx), ECF Nos. 29, 30], attached to the parties' stipulation as Exhibit A (the "August Stipulation"), shall remain in full force and effect, except as explicitly modified herein.  For purposes of paragraphs 2 and 3 hereof, capitalized terms shall have the same meaning as in the August Stipulation.

2.      In addition to the proceeds of "The Wolf of Wall Street," as set forth in the August Stipulation, CNB and Fintage are hereby authorized to, and shall disburse all proceeds of the film "Dumb and Dumber To" owed to, as the case may be, Comerica under the Sweep Agreement, the Control Agreement, the Security Agreement and the Loan Agreement, provided, however, after the date that all monetary obligations owing to Comerica and the Lenders under the Loan Agreement have been repaid in full and the commitment of the Lenders to advance funds thereunder has terminated, whereupon Comerica's and the Lenders' rights under the Sweep Agreement terminate, any proceeds from "The Wolf of Wall Street" and/or "Dumb and Dumber To" in the Collection Account specified in the CAMA as being payable to Red Granite, or as otherwise payable to Red Granite or any of its affiliates (including, without limitation, TWOWS, LLC or DDTo Finance, LLC) may continue to be held by Fintage pursuant to the terms of the August Stipulation. For purposes of this stipulation, the "proceeds" of a motion picture has the same meaning as set forth in the August Stipulation.

3.      Within seven calendar days hereof, the Parties shall agree upon the identity of an independent operational fiduciary (the "IOF") and notify the Court of their selection. The IOF shall be appointed, on an interim basis, for a term of thirty calendar days from the date that the Parties provide such notice to the Court. At the conclusion of that thirty day period, the Parties shall either agree in writing to continue the appointment of the interim IOF, or shall agree in writing to the appointment of a different person to serve as IOF. For the avoidance of doubt, until such time as the Parties agree on a different IOF, the interim IOF shall remain the IOF. If for whatever reason the Parties are unable to agree on the role or identity of the IOF, any Party may apply to the Court for appropriate relief, including the appointment of a different person as IOF. By agreeing to the appointment of an interim IOF, neither Party agrees that it is necessary to retain an IOF on a longer-term basis, and all Parties reserve their rights to move to terminate the IOF or to modify the IOF's role and responsibilities. This Order is without

prejudice to any such application by any Party.

4. The IOF shall be responsible for monitoring the operations and management of Red Granite, working in conjunction with Red Granite's present management team, and for maximizing Red Granite's value as a going concern, as set forth below. In all instances, the IOF's fiduciary duty shall be to Red Granite itself, and not to the United States nor to any Red Granite officer, director, employee, shareholder, or interestholder.

5. The IOF shall have the following authority:
   a. To inspect the financial books and records of Red Granite, including general ledgers, transaction documentation, bank statements, and non-privileged auditor work papers.
   b. To monitor and confirm that transactions conducted by Red Granite's existing management team are transactions in the ordinary course of business. In the event that the IOF fails to confirm or reject a scheduled transaction within three business days, it shall be deemed to have been approved.
   c. In conjunction with and upon the recommendation of Red Granite's existing management team, to open bank accounts.
   d. To work with Red Granite's existing management team to prepare and validate information and projections that reasonably estimate: (i) the net market value of all recorded assets and liabilities, (ii) any contingent assets and liabilities, and (iii) the impact of any relevant contractual terms and covenants.
   e. To assist Red Granite's existing management to collect accounts receivable and other monies due to Red Granite.
   f. To take appropriate steps, in consultation with Red Granite's management team, to preserve and protect Red Granite's assets pending a settlement among the Parties or further order of the Court.

      g. To make recommendations to the Parties with respect to any non-ordinary course transaction that the IOF believes to be in the best interest of Red Granite.

6. The IOF's right to inspect the financial books and records of Red Granite shall not interfere with any right of the Parties to inspect those books and records.

7. To the extent that the IOF rejects or reports to the Parties a proposed ordinary course transaction or otherwise proposes to take any actions contrary to the wishes of Red Granite's management, the Parties shall meet and confer to attempt to resolve the difference. If the Parties are for whatever reason unable to agree, the dispute shall be brought to the Court for decision. During the pendency of any such dispute, the IOF and Red Granite's management shall maintain the status quo (*e.g.*, if the IOF rejects a transaction, such transaction shall not be made while any dispute is pending).

8. The IOF shall <u>not</u> have the power to engage in non-ordinary course transactions, including but not limited to entering into new loan facilities, acquiring capital assets, selling or otherwise disposing of assets, rejecting or otherwise withdrawing from or breaking contracts, or hiring or firing personnel. To the extent that either Red Granite's management or the IOF believe that a non-ordinary course transaction is appropriate during the pendency of this stipulation, the Parties shall meet and confer, and any disputes shall be brought to the Court for decision. To the extent that there is any dispute about whether a transaction is ordinary course, it shall be deemed not to be in the ordinary course.

9. The existing and any future claimants (in either Case No. 16-cv-05362-DSF (PLAx) or Case No. 17-cv-04439-DSF (PLAx)) and their current managers and directors shall continue to have the sole authority to litigate these actions, and shall continue to have sole control over the attorney-client privilege. The IOF shall not have any authority to make legal determinations or to prosecute or discontinue claims in those actions. The IOF shall also not have the right to access attorney-client privileged information or attorney work product, nor to waive any privilege, protection, or immunity, nor shall the IOF have the right to provide access to Red Granite's offices, property, or information to

any third Party, including but not limited to the Plaintiff, except as set forth in paragraphs 6 and 11 hereof.

10. After consulting with the Parties, the IOF shall have the right to retain consultants or professionals in furtherance of his or her duties under this stipulation. To the greatest extent possible and consistent with the IOF's fiduciary obligations, the IOF shall rely upon the work of Red Granite's existing staff, and in any event the IOF shall take all reasonable steps to minimize his or her own costs and the costs of any professionals or consultants.

11. The IOF shall periodically meet with representatives of the parties to provide a report on the IOF's work and recommendations, if any, subject to an appropriate confidentiality agreement among the Parties. Such reports may contain copies of, and the IOF's related comments on, Red Granite's standard, non-privileged, internally-prepared management reports (including balance sheets, income statements, cash flow statements, forecasts, and debt repayment schedules) and any independently audited financial statements and/or financial statements provided to third parties. The first such meeting shall take place within seven calendar days of the IOF's appointment.

12. The reasonable fees and expenses of the IOF and any professionals or consultants retained by the IOF shall be paid for by Red Granite during the initial thirty day period. Pursuant to Paragraph 2 of the August Stipulation, Comerica and the Lenders may make additional loans or advances to the Borrowers under the Loan Agreement as necessary to compensate the IOF. Red Granite reserves its rights to seek reimbursement for any fees and expenses paid to the IOF, or to professionals or consultants retained by the IOF, including pursuant to Title 28, United States Code, Section 2465.

DATED: 7/7/17

UNITED STATES DISTRICT JUDGE

PRESENTED BY:

Matthew L. Schwartz (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
575 Lexington Ave.
New York, New York 10022
Telephone: (212) 446-2300
Fax: (212) 446-2350
E-mail: mlschwartz@bsfllp.com

<u>/s/ Matthew L. Schwartz</u>
MATTHEW L. SCHWARTZ
*Attorney for Red Granite Pictures, Inc.*