DEBORAH CONNOR, Acting Chief
Money Laundering and Asset Recovery Section (MLARS)
MARY BUTLER, Chief, International Unit
WOO S. LEE
Deputy Chief, International Unit
JONATHAN BAUM, Senior Trial Attorney
BARBARA LEVY, Trial Attorney
Criminal Division
United States Department of Justice
   1400 New York Avenue, N.W., 10th Floor
   Washington, D.C. 20530
   Telephone: (202) 514-1263
   Email:  Woo.Lee@usdoj.gov
SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JOHN J. KUCERA (CBN: 274184)
JONATHAN GALATZAN (CBN: 190414)
Assistant United States Attorneys
Asset Forfeiture Section
   312 North Spring Street, 14th Floor
   Los Angeles, California 90012
   Telephone: (213) 894-3391/(213) 894-2727
   Facsimile: (213) 894-7177
   Email: John.Kucera@usdoj.gov
        Jonathan.Galatzan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CV 16-5362-DSF (PLAx) |
| Plaintiff, | AMENDED GOVERNMENT'S REPLY TO CLAIMANTS' OPPOSITION TO MOTION FOR ORDER STAYING CIVIL FORFEITURE PROCEEDINGS FOR ALL PURPOSES EXCEPT THE FILING OF TIMELY CLAIMS AND ANSWERS; DECLARATIONS OF ROBERT B. HEUCHLING & JOHN J. KUCERA |
| v. | |
| "THE WOLF OF WALL STREET" MOTION PICTURE, | |
| Defendant. | |
| | DATE: September 18, 2017 |
| | TIME: 1:30 PM |
| | CTRM: 7D |

Plaintiff United States of America ("the government"), through its counsel of record, hereby submits its reply to the opposition of claimants Red Granite Pictures, Inc.; Red Granite Capital, Ltd.; Red Granite Capital US LLC; TWOWS LLC; Red Granite International, Inc.  (the "Aziz" Claimant) to the government's Motion to Stay Civil Forfeiture Proceedings For All Purposes Except the Filing of Timely Claims and Answers.

Dated: September 5, 2017         Respectfully submitted,

DEBORAH CONNOR
Acting Chief, MLARS

SANDRA R. BROWN
Acting United States Attorney

   /s/*John J. Kucera*
JOHN J. KUCERA
JONATHAN GALATZAN
Assistant United States Attorneys

WOO S. LEE
Deputy Chief, MLARS
JONATHAN BAUM
Senior Trial Attorney, MLARS
BARBARA LEVY
Trial Attorney, MLARS

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **<u>TABLE OF CONTENTS</u>**

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.      INTRODUCTION ............................................................................ 1

II.     STATEMENT OF FACTS ............................................................... 1

III.    ARGUMENT .................................................................................... 3

     A.   The Government Has Satisfied Its Burden Under Section 981(g)(1)
        By Showing A Likely Adverse Impact On the Criminal Investigation ....... 3

     B.   The Relatedness of the Forfeiture Cases Makes Any Discovery
        Request Applicable to the Criminal Investigation ......................... 4

     C.   The Court Should Reject Claimants' Requests for Limited Discovery
        or a Protective Order ................................................................ 7

     D.   The Requested Stay Will Not Violate Claimants' Due Process Rights ....... 9

     E.   The Government's Stay Request Would Not Result in an Indefinite
        Stay .......................................................................................... 11

IV.    CONCLUSION ............................................................................... 12

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*See United States v. $6,787.99 in United States Currency*,
2007 WL 496747  (N.D. Ga. 2007)........................................................... 10

*United States v. $1,026,781.61 in United States Currency*,
2013 WL 4714188 (C.D. Cal. July 29, 2013) ................................... 4, 11

*United States v. $133,420.00 in U.S. Currency*,
672 F.3d 629 (9th Cir. 2012) .................................................................. 11

*United States v. $307,970*, 156
F. Supp. 2d 708 (E.D.N.C. 2016) ............................................................ 7

*United States v. $39,956.45*,
2017 WL 1214459 (M.D.N.C. Jan. 18, 2017)............................... 6, 9, 11

*United States v. $463,497.72 in U.S. Currency*,
604 F. Supp. 2d 978 (E.D. Mich. 2009) ................................................. 10

*United States v. $743,856.34*,
2015 WL 3867092 (C.D. Cal. Jun. 22, 2015)......................................... 11

*United States v. $8,850*,
461 U.S. 555 (1983).............................................................................. 10

*United States v. All Funds on Deposit in Business Marketing Account*,
319 F. Supp. 2d 290 (E.D.N.Y. 2004) ..................................................... 4

*United States v. All Funds on Deposit in Suntrust Bank Account Number XXXXXXXXX8359*,
456 F. Supp. 2d 64 (D.D.C. 2006)........................................................... 4

*United States v. Approx. $69,577*,
2009 WL 14044690 (N. D. Cal. May 19, 2009) ...................................... 8

*United States v. Assorted Firearms, et al.*,
677 F. Supp. 2d 1214 (C.D. Cal. 2009) ................................................... 4

*United States v. Lazarenko*,
476 F.3d 642 (9th Cir. 2007) ................................................................. 11

*United States v. One 2008 Audi R8 Coupe Quattro*,
866 F. Supp. 2d 1180 (C.D. Cal. 2011)........................................... 3, 4, 8

*United States v. Real Prop.*, 2012 WL 4364076  (E. D. Cal. Sept. 21, 2012)......... 8, 9, 10

*United States v. VIN: WP1AD2A26DLA72280*,
2014 WL 289379  (M.D. Fla. Jan. 27, 2014) ........................................... 4

i

**TABLE OF AUTHORITIES (CONTINUED)**

**STATUTES**

18 U.S.C. § 981(g) ................................................................ 1, 2, 9, 11

18 U.S.C. § 981(g) (1) ..................................................................... 3, 4

18 U.S.C. § 981(g)(4) ........................................................................... 7

18 U.S.C. § 983(f)(1) .......................................................................... 10

18 U.S.C. §983(g)(3) ............................................................................ 8

**RULES**

Fed. R. Civ. P. 26(e)(1) ........................................................................ 7

Fed. R. Cr. P. 6(e) .............................................................................. 10

Local Rule 7-3 ....................................................................................... 3

Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture
Action
    Rule G(6) ...................................................................................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff United States of America (the "government") submits this memorandum in reply to Claimants' opposition to the government's motion to stay this action.[1] Although the government expects to participate fully in all aspects of discovery once appropriate, a stay of these proceedings is warranted now because allowing civil discovery will adversely affect the government's related criminal investigation.  Some of the Claimants have opposed the stay, arguing that discovery will not adversely affect the government's criminal investigation, that the motion is overbroad, and that it violates Claimants' due process rights.  Because 18 U.S.C. § 981(g) expressly provides for a stay under the circumstances here and Claimants' objections lack merit, this Court should grant the government's motion.

## II.   STATEMENT OF FACTS

On July 20, 2016, the government filed 16 forfeiture actions alleging that the defendant assets were traceable to or involved in a massive conspiracy to misappropriate and launder billions of dollars from 1 Malaysia Development Berhad ("1MDB"), an entity owned by the Malaysian government.  Individuals alleged to have been involved in the underlying criminal activity included Taek Jho Low ("Jho Low"), Riza Aziz ("Aziz"), Khadem al-Qubaisi ("Qubaisi"), and others.

In the remaining 14  actions, the defendants include  eight assets alleged to have been acquired by Jho Low (the "Low Actions");[2] four alleged to have been acquired by

---

[1] Of the 16 related civil forfeiture actions filed by the government on July 20, 2016, one was resolved and another is in default proceedings. The government has moved to stay the rest. Three claimants filed opposition briefs: the "Low Claimant"; the "Aziz Claimant"; and the "Qubaisi Claimant." Rather than file 14 essentially identical briefs in the various cases, the government has prepared a single, omnibus reply brief.

[2] CV 16-5364-DSF (PLA); CV 16-5367-DSF (PLA); CV 16-5368-DSF (PLA); CV 16-5369-DSF (PLA; CV 16-5370-DSF (PLA); CV 16-5374-DSF (PLA); CV 16-5375-DSF (PLA); and CV 16-5378-DSF (PLA).

Riza Aziz (the "Aziz Actions");[3] and two alleged to have been acquired by Qubaisi (the "Qubaisi Actions") (collectively the "1MDB Actions").[4]

In the Low Actions, the government required that any claim be filed no later than September 9, 2016.  The Low Claimant, a limited liability company that  holds title to the defendant assets in the Low Actions, was granted two extensions to that deadline, first to October 7, 2016, and then to October 31, 2016.  Contrary to the Low Claimant's contention that the government delayed these proceedings by "thwarting [the Low] Claimant[] from appearing in this case," (Low Cl. Opp., Dkt. No. 109 at 5),[5] in actuality, it was the Low Claimant that, for more than six months, "knowingly failed to file" a claim. (Ct. Order, Dkt. No. 89 at 3).  Indeed, as noted by the Court, the entity that controlled the Low Claimant at the time "made a conscious choice not to file claims" by the claims deadline. *Id.* at 2.[6]

This is not to suggest that Jho Low and his confederates took no action by the October 31, 2016 deadline.  On that date, Low's parents, brother and sister (the "Low Family"), none of whom held title to any of the Low assets, filed a claim to those assets. The Low Family also requested that the court further extend the claims deadline, which request was denied on December 12, 2016.  The Low Claimant neither appeared in any of the Low Actions, nor joined in that request.  Indeed, it was not until March 21, 2017, after Low had succeeded in replacing the recalcitrant trustees in control of the Low assets, that the Low Claimant sought and received permission to file a late claim.

---

[3] CV 16-5362-DSF (PLA); CV 16-5371-DSF (PLA); CV 16-5377-DSF (PLA); and CV 16-5380-DSF (PLA).

[4] CV 16-5376-DSF (PLA) and CV 16-5379-DSF (PLA).

[5] For convenience, all references to docket entries for the Low Claimant are to case no. CV 16-5378; all references to docket entries for the Qubaisi Claimant are to case no. CV 16-5379-DSF; and all references to docket entries for the Aziz Claimant are to case no. CV 16-5377.

[6] Furthermore, while the Low Claimant contends that the government "paralyzed" it by suggesting that the filing of a claim could trigger criminal liability, the Court found that Claimant had not provided  "sufficient information to form an opinion" as to this contention.  Ct. Order, Dkt. No. 89 at 3.

1    As explained in the previously filed Declaration of Federal Bureau of

2    Investigations ("FBI") Special Agent Jill Enyart ("Enyart Declaration"), and further

3    explained in the attached Declaration of FBI Special Agent Robert Heuchling

4    ("Heuchling Declaration"), prior to filing the 1MDB Actions, the government

5    commenced its criminal investigation into the events described in the complaints.  That

6    criminal investigation remains ongoing.[7]

7    III.  **ARGUMENT**

8        **A.    The Government Has Satisfied Its Burden Under Section 981(g)(1) By
             Showing A Likely Adverse Impact On the Criminal Investigation**

9

10       The government's motion and supporting declarations set forth ample facts

11   demonstrating the likely adverse consequences that civil discovery would have on the

12   government's related criminal investigation.  These consequences include, among others,

13   the potential disclosure of targets and subjects of the investigation and the government's

14   investigative techniques, the identification or intimidation of potential witnesses, and the

15   disclosure of the government's sources of evidence and information, including from

16   foreign jurisdictions. (Enyart Decl. ¶¶ 5-6; Heuchling Decl. ¶¶ 10-11, 14-17).  Yet

17   Claimants assert with little, if any, basis that the government's burden under § 981(g)(1)

18   requires more detailed allegations of harm.  (*See* Low Cl. Opp., Dkt. No. 109, at 10;

19   Qubaisi Cl. Opp., Dkt. 55, at 9-11; and Aziz Cl. Opp., Dkt. No. 79, at 13.)  Not only is

20   the particularized showing that Claimants propose not the law, but requiring such a

21   showing would result in the very prejudice that § 981(g)(1) is designed to prevent. *See*

22   *United States v. One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d 1180, 1183-84 (C.D.

23   _____

24       [7] The Qubaisi Claimant's contention that 18 U.S.C. § 981(g) includes a distinct
     meet-and-confer requirement (Qubaisi Cl. Opp., Dkt. No. 58 at 3-5) is flatly incorrect
25   and without legal basis.  Consistent with Local Rule 7-3, attorneys for the Government
     and the Qubaisi Claimant exchanged no fewer than 17 e-mails in July 2017 to discuss
26   case-related matters, including the anticipated motion to stay.  (Decl. of John J. Kucera,
     ¶ 2.)  Although Claimant correctly characterizes the substance of the discussion as
27   having been focused on case management deadlines, this was largely out of deference to
     Qubaisi Claimant's counsel's request to extend the proposed deadlines for personal
28   reasons and to allow Qubaisi Claimant's counsel time to confer with their client(s).  (*Id.*
     ¶ 3.)

Cal. 2011) (dismissing claimant's argument for more specific disclosure of prejudice through detailed evidentiary support); *United States v. $1,026,781.61 in United States Currency*, 2013 WL 4714188, at *1 (C.D. Cal. July 29, 2013) (same).

Indeed, courts in this district have routinely imposed stays of civil forfeiture cases "on the basis of the Government's allegations of *likely* prejudice to the criminal proceeding," without requiring it to name specific witnesses or identify particularized evidence. *One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d at 1185 (emphasis added); *$1,026,781.61*, 2013 WL 4714188, at *1; *United States v. Assorted Firearms, et al.,* 677 F. Supp. 2d 1214, 1216 (C.D. Cal. 2009). Many courts have recognized that the very concerns raised in the government's motion are more than sufficient to justify a § 981(g)(1) stay.[8] As stated in its moving papers, should the Court require a more detailed explanation of the scope and status of the related criminal investigation, the government stands ready to provide it under seal and *in camera*. (Mot. at 13.)

### B. The Relatedness of the Forfeiture Cases Makes Any Discovery Request Applicable to the Criminal Investigation

The Aziz and Qubaisi Claimants argue that a stay is inappropriate here because neither has yet propounded discovery, but this ignores the fact that their respective actions are among 29 related forfeiture actions pending before the Court, all of which are based on the same essential facts and allegations. (Mot. at 1, Heuchling Decl. ¶ 2.) Accordingly, any discovery request propounded in *any* of the related cases creates a

/ / /

---

[8] *See United States v. VIN: WP1AD2A26DLA72280*, 2014 WL 289379, *2 (M.D. Fla. Jan. 27, 2014) (stay granted because discovery of the identities of the witnesses would jeopardize the criminal investigation); *United States v. All Funds on Deposit in Suntrust Bank Account Number XXXXXXXXX8359*, 456 F. Supp. 2d 64, 66 (D.D.C. 2006) (granting motion for a stay because the discovery "could compromise any existing confidential informants and/or interfere with the Government's ability to obtain confidential information from others"); *United States v. All Funds on Deposit in Business Marketing Account*, 319 F. Supp. 2d 290, 294 (E.D.N.Y. 2004) ("The court is satisfied that information routinely ordered disclosed in civil matters would compromise the identity of confidential informants and cooperating witnesses. Under these circumstances, the court is required to stay this civil action. 18 U.S.C. § 981(g)(1)").

4

1   significant risk that such disclosures could adversely affect the government's ongoing

2   criminal investigation.  (Heuchling Decl. ¶ 10.)

3       In fact, the Low Claimant has already served broad discovery on the government

4   that would have required disclosure of extensive details about the criminal investigation.

5   While it attaches a "tailored set of document requests" as Exhibit A to its Opposition, the

6   Low Claimant neglects to mention that in three of the Low Actions, it already

7   propounded broad, sweeping discovery intended to capture the largest possible universe

8   of facts relating to the underlying investigation.  (Heuchling Decl. ¶ 5, Exs. A-C.)

9       Indeed, the likelihood of harm that would result from the Low Claimant's

10  discovery requests is evident from the sweeping scope of those requests.  (*See id.* ¶¶ 6-9,

11  12-13.)  The requests seek "[d]ocuments" and "[c]ommunications" "[c]oncerning"[9] the

12  government's investigation, including the identity of witnesses, the government's

13  sources of evidence, and  documents and materials the government obtained during its

14  criminal investigation relating to the facts alleged in the complaint.  (*Id.* Exs. A-C.)

15      The discovery requests take an equally broad view of *who* is required to produce

16  the requested documents.  The term "Plaintiff" is defined to include not just the

17  Department of Justice and the relevant investigatory agencies, but the "United States of

18  America in any capacity, including . . . the Department of State [and the] Department of

19  the Treasury . . . . and all persons acting for or on behalf of the Plaintiff or possessing

20  documents or information for or on behalf of Plaintiff."  This definition would

21  presumably require the government to produce discovery, including such items as

22  diplomatic cables, from the entire United States government, including its contractors

23  and agents, irrespective of whether these records are relevant to this action.  (*Id.*).

24  _____

25      [9] The relevant discovery requests give even these terms expansive definitions.
    According to the "Definitions" section, the term "Document" has "the broadest meaning
26  accorded under the FRCP" (Definitions 8, 30).  The term "Communication" means,
    "without limitation, every manner of transmitting, transferring, exchanging, or sharing
27  information  . . . by any means whatsoever . . . ." (Definitions 9, 31).  The definition of
    "concerning" purports to give this term "the broadest meaning possible, including
28  relating to, referring to, reflecting, constituting, demonstrating, proving and disproving"
    (Definitions 17, 39)

Even responding to a more limited set of requests, such as those seeking bank documents (*see* Low Cl. Opp., Dkt. No. 109, Ex. A), would risk exposing the Government's confidential sources and methods; the strengths and weaknesses of the Government's evidence collection efforts; and offer other insights into the Government's criminal investigation strategy, information to which the Claimants simply are not entitled.  (Heuchling Decl. ¶¶ 10-11.)  The concerns raised by the government in its Motion are neither vague nor speculative, nor merely academic.  Indeed, a number of individuals who have provided information to the government have expressed significant concerns relating to safety, including possible retaliation, if the identities of certain witnesses were disclosed.  (*Id.* ¶ 15.)  Requiring the government to disclose its witnesses at this time "could discourage those witnesses from continuing to cooperate . . . and may interfere with the Government's ability to obtain confidential information from others." *See United States v. $39,956.45*, 2017 WL 1214459, at *9 (M.D.N.C. Jan. 18, 2017). The gravity of these safety concerns are further illuminated by recent press reports concerning retaliatory acts potentially linked to the complaint's allegations.  (Heuchling Decl. ¶ 14.)  Given the overlapping nature of the 1MDB Actions with the criminal investigation, the requested stay of all civil proceedings is the surest safeguard against the likely adverse consequences identified by the government.[10]

Accordingly, even though the law is clear that a stay is appropriate even where no discovery requests have been made (*see* Mot. at 10), the necessity of a stay here is stark because the Low Claimant has already sought information through civil discovery that would adversely impact the ongoing criminal investigation.[11]

---

[10] The Aziz and Qubaisi Claimants misconstrue the Enyart Declaration's warning that evidence could be destroyed before Claimants have a chance to obtain it, requiring immediate disclosure.  (*See* Aziz Cl. Opp., Dkt. No. 79, at 16.)  To the contrary, the Government contends that such evidence would be preserved by granting a stay.

[11] The Qubaisi Claimant's argument that the Government has failed to show that the criminal investigation is related to the instant case wholly overlooks: (1) the Government's detailed description of how all of the related cases stem from the underlying global investigation into 1MDB (Mot. at 1-3); (2) further detailed descriptions of the four specific phases of alleged criminal conduct (*id.* at 3-8); and (3)

6

### C.     The Court Should Reject Claimants' Requests for Limited Discovery or a Protective Order

Claimants suggest that a protective order or, alternatively, limited discovery is appropriate and will adequately address the government's concerns.  These arguments fail for several reasons.  First, as the Low Claimant acknowledges, the government's complaint already provides detailed facts "span[ning] hundreds of paragraphs and pages," identifying a "substantial" number of persons and entities involved in the acts from which the forfeiture claims arose.  (Low Cl. Opp., Dkt. No. 109 at 15).  Any further disclosure of information, even of a limited nature, would provide insight into, among other things, the government's witnesses, sources of information and investigative priorities.  (*See* Heuchling Decl. at ¶¶ 10-11.)

Second, allowing limited discovery (even subject to a protective order) would require the government to produce incomplete or partial information.  Again, this is precisely the type of discovery that Section 981(g) was intended to foreclose.  *United States v. $307,970*, 156 F. Supp. 2d 708, 726 (E.D.N.C. 2016).  As noted in *$307,970*, a case upon which the Low Claimant relies, "[s]uch limited discovery hampers both parties' efforts; it impairs claimants' ability to mount a forceful and complete defense and further may compromise the government's pending criminal investigation."  *Id.*

Third, the Federal Rules impose an on-going duty to supplement discovery responses that it later learns were incomplete or incorrect.  Fed. R. Civ. P. 26(e)(1).  Were the Court to allow discovery to proceed, the government arguably would be required to constantly supplement its discovery responses as the investigation progressed.  This would further compound the harm already posed by limited discovery because it would enable Claimants to effectively track the status of the government's

---

specific allegations that the criminal conduct alleged in the "Aabar-BVI" phase was used to finance or acquire the defendant *in rem* (*id.* at 5-6). *See* 18 U.S.C. § 981(g)(4) ("In determining whether a criminal case or investigation is 'related' to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.")

7

investigation and require the government to disclose information relating to potential subjects and targets of the investigation before the Criminal Rules would otherwise require. *See United States v. Real Prop.*, 2012 WL 4364076, at *3 (E. D. Cal. Sept. 21, 2012) ("Civil discovery is likely to adversely affect . . . criminal proceedings because it will subject the Government to broader and earlier discovery than would occur in a criminal proceeding").

Fourth, a protective order would be inadequate to counteract the adverse effect on the criminal investigation because it would not prevent the release of sensitive information to the potential subjects and targets of the investigation. Claimants' suggestion relating to a protective order ignores the fact that each of the Claimants is affiliated with one or more individuals or entities alleged in the Complaint to have conspired in the misappropriation of over $1 billion from 1MDB.[12]

The close association between the Claimants and those alleged to have been directly involved in the underlying criminal activity from which the forfeiture claims arose increases the likelihood that the criminal investigation could be adversely affected by such disclosures. *See One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d at 1184 ("[d]ue to th[e] close relationship" between claimant and criminal defendant "there is a significant risk that information obtained by" claimant will be disclosed to criminal subject); *United States v. Approx. $69,577*, 2009 WL 14044690, at *3-4 (N. D. Cal. May 19, 2009) (stay warranted where claimants are family members of criminal subject).

Furthermore a protective order under 18 U.S.C. §983(g)(3) is not appropriate where it would allow "one party to pursue discovery while the other party is substantially unable to do so." As the Low Claimant acknowledges, the government's

---

[12] Specifically, the Low Family hand-picked FFP (the Cayman Islands entity that controls the Low Claimant) to serve as trustee over multiple trusts that control the Low Claimant, and the Low Family and FFP consulted the same law firm regarding U.S. law. (DN 43-1, Zaheer Decl., Ex. A). Similarly, the Aziz Claimant is controlled by Riza Aziz, who has close ties to the public official who oversaw 1MDB. (Complaint at ¶ 33). The Qubaisi Claimant is controlled by a trust, the assets of which Qubaisi acquired using funds allegedly misappropriated from 1MDB. (*Id.* at ¶¶ 650-64).

8

complaint appears to identify a "veritable list of its potential targets, subjects and witnesses." (Low Cl. Opp., Dkt. No. 109 at 16- 17) ("The cat is out of the bag."). As such, if discovery were allowed to proceed, several of these same persons, who possess discoverable information, may decline to respond to the government's discovery or in some situations, force the government to avoid propounding discovery on certain individuals and entities who themselves are also under criminal investigation, but are currently unaware of that fact. *See $39,956.45*, 2017 WL 1214459, at *9 (protective order that guards against self-incrimination while allowing parties to adequately pursue civil action was "impossible"). This would result in precisely the type of one-way discovery that Section 983(g) was intended to foreclose.[13]

### D.   The Requested Stay Will Not Violate Claimants' Due Process Rights

Staying this action will not violate Claimants' Due Process rights. In *United States v. Real Prop.*, 2012 WL 4364076, at *5 (E. D. Cal. Sept. 21, 2012), the court held that four factors should be balanced in assessing the reasonableness of a delay caused by a stay: (1) the length of the delay; (2) the reasons for the delay; (3) the timing of claimant's assertion of his rights; and (4) prejudice to the claimant. Each of these factors weighs in favor of the Government here.

The duration of the government's proposed stay is dependent upon its related criminal investigation. Although Claimants predict—without any factual basis—that the government's proposed stay will be so lengthy that it will result in a constitutional violation, this is simply speculation. As noted by the court in *Real Prop.*, it is not possible to "speculate on the anticipated duration" of a criminal proceeding. *Id.* Accordingly, "that issue is not yet ripe for adjudication." *Id.*

---

[13] For these same reasons, it would be inappropriate to permit, as the Aziz Claimants suggest, Claimants to propound third party discovery compelling individuals to disclose the content and nature of their cooperation, if any, with the government. Not only would this enable Claimants to obtain insight into the investigation but it would enable Claimants to engage in discovery while the government could not, as any affirmative discovery by the government would provide insight into the government's investigative priorities as well as disclose both what information the government already possesses and what information it continues to seek.

Likewise, the "reason for the delay" here inures in the government's favor.  The fact of a related criminal proceeding, the existence of which neither the Low nor Aziz Claimants contest here, "has long been considered a justification for a lengthy delay in forfeiture proceedings."  *Id.* at 14; *see also United States v. $8,850*, 461 U.S. 555, 567 (1983) ("Pending criminal proceedings present similar justifications for delay . . . "). Furthermore, the sheer complexity of the 1MDB Actions, which include individuals and evidence in numerous jurisdictions, voluminous financial records spanning several years, and complex financial transactions (*see* Heuchling Decl. ¶¶ 2, 17), warrants a longer delay than might otherwise be required.  *Cf. United States v. $463,497.72 in U.S. Currency*, 604 F. Supp. 2d 978 (E.D. Mich. 2009) (limited stay more appropriate where the subject investigation was not "particularly far-reaching or complicated.")

Claimants have also failed to show how staying these forfeiture proceedings will result in any demonstrable prejudice.  In *Real Prop.*, the court rejected the claimant's argument that the government's seizure of a Mercedez-Benz amounted to a "hardship" because the "need for the [Mercedez] is as a convenience to the Claimant rather than a necessity."  *Id.* at 15-16.  Here, the defendant assets consist of commercial assets or luxury real estate.  Claimants have yet to explain with any clarity how staying proceedings relating to luxury real estate properties and/or commercial holdings will result in "hardship,"[14] particularly in light of the fact that the government has not seized any of the defendant assets at issue here.[15]

---

[14] The Qubaisi Claimant provides no explanation for its assertion that a stay would prevent it from keeping current on the costs of maintaining the defendant asset. (Qubaisi Cl. Opp., Dkt. No. 58 at 15.)  Likewise, the Qubaisi Claimant offers no justification for why escrowed proceeds from the interlocutory sale of a separate property (CV 16-5379) should be released in order to cover the costs of another asset.  (*Id.* at 16.)  If the Qubaisi Claimant believes that the funds currently held in escrow should be released for any purpose, it should make such a showing to the Court pursuant to 18 U.S.C. § 983(f)(1). *See United States v. $6,787.99 in United States Currency*, 2007 WL 496747, at * 1-2 (N.D. Ga. 2007).

[15] The contention by the Aziz Claimant that any "leaks" of "Rule 6(e) material" have come from the U.S. Government (Aziz Cl. Opp., Dct. No. 79, at 18 n.11) is unsupported by any evidence.  Although the Aziz Claimant contends that news articles source their information to "investigators," some of these same news articles also note

### E.     The Government's Stay Request Would Not Result in an Indefinite Stay

Claimants mischaracterizes the government's motion as one seeking an "indefinite" stay.  The proposed order the government filed concurrently with its motion expressly provides that the government shall "file a status report concerning the status of the criminal proceeding every one hundred and eighty (180) days" in order to "permit the Court to monitor this action." (Prop. Ord., Dkt. No. 106-1).  By so doing, the Court can assess on a regular basis the propriety and need for a continued stay.  Numerous courts, in this district and others, have stayed forfeiture proceedings under 18 U.S.C. § 981(g) on a similar basis.  *See, e.g., United States v. $1,026,781.61 in United States Currency*, 2013 4714188, at *2 (granting stay motion but stating that the "parties shall keep the Court apprised of any material developments in the criminal case"); *United States v. $743,856.34*, 2015 WL 3867092, at *2 (C.D. Cal. Jun. 22, 2015) (staying case but requiring government to file regular status reports); *United States v. $39,956.45*, 22017 WL 1214459, at *9 (M.D.N.C. Jan. 18, 2017) (same).

Finally, if the Court were to allow, as Claimants request, Rule 12 motions, the Court should also require each Claimant first to respond to special interrogatories to establish its standing pursuant to Supplemental Rule G(6).  *See*, *e.g.*, *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 642 (9th Cir. 2012).  Standing is a threshold issue that must be determined first, before a court turns to any other issues, because where a claimant lack standing, a court lacks jurisdiction to hear that claimant's Rule 12 motion.  *See*, *e.g.*, *United States v. $133,420.00*, 672 F.3d 629, 642 (9th Cir. 2012); *United States v. Lazarenko*, 476 F.3d 642, 649 (9th Cir. 2007).

/ / /

/ / /

---

that several countries in Europe, Asia and the Middle East have opened investigations into 1MDB.

11

IV.   **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this action be stayed for all purposes except for the filing of timely claims and answers.

Dated: September 5, 2017

Respectfully submitted,

DEBORAH CONNOR
Acting Chief, MLARS

SANDRA R. BROWN
Acting United States Attorney

_____/s/John J. Kucera_____
JOHN J. KUCERA
JONATHAN GALATZAN
Assistant United States Attorneys

WOO S. LEE
Deputy Chief, MLARS
JONATHAN BAUM
Senior Trial Attorney, MLARS
BARBARA LEVY
Trial Attorney, MLARS

Attorneys for Plaintiff
UNITED STATES OF AMERICA

12